UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, *ex rel.*
GARY K. KING, Attorney General,

      Plaintiff,

v.

                                                Civ. No. 12-16 MV/RHS

CREDIT ARBITRATORS, LLC

And

CREDITANSWERS, LLC,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment on All Counts of the Complaint [Doc. 90], and Plaintiff's Motion for Summary Judgment and Supporting Memorandum on All Claims [Doc. 92]. The Court, having considered the motions, briefs, relevant law, and being otherwise fully informed, finds that Defendants' Motion is not well-taken and will be denied, and that Plaintiff's Motion is well-taken in part and will be granted in part.

**BACKGROUND**

      Defendants CreditArbitrators, LLC, and CreditAnswers, LLC, are companies that provide, or have provided, debt settlement services. Doc. 90-1 at ¶¶ 3-4. Defendants submitted the declaration of Richard Burton, the former General Counsel of CreditAnswers and the current Executive Vice President and General Counsel of CreditArbitrators. In his declaration, Mr. Burton states that Defendants promoted their services to potential New Mexico clients by mailing

"written promotional materials." *Id.* ¶ 6. According to Mr. Burton, all of Defendants' promotional materials "contained, referenced, and/or provided a catalog with a special catalog phone number," and "[t]he toll free numbers were not listed anywhere else other than in the catalog mailings." *Id.* ¶¶ 6, 10.

After receiving Defendants' promotional materials, an individual interested in securing Defendants' services would contact Defendants by telephone, at the number provided in the solicitation he or she received, and would speak with a "credit specialist." Doc. 90 ¶ 5; Doc. 92 ¶ 2. Once an individual agreed to use Defendants' services, Defendants would send out an enrollment packet or "Welcome Kit," which requires a customer to list his or her creditors and the debt amount to be enrolled in Defendants' debt settlement program. Doc. 92 ¶ 3. The Welcome Kit includes the following statements: a client's "debts may continue to accrue interest and fees until we are able to negotiate on the account;" "CreditArbitrators cannot stop collection calls or correspondence from your creditors until a settlement has been paid;" "[c]reditors may be persistent in attempting to collect the debt that is owed;" "the decision of making payments [to creditors] is entirely up to you;" "CreditArbitrators does not have any control over your savings;" and "CreditArbitrators will typically collect its fees by drafting the designated bank account each month on the date specified in your Enrollment Agreement." Doc. 90-2.

To complete enrollment in Defendants' debt settlement program, the individual would execute a "Debt Settlement Program Agreement" (the "Program Agreement"). Doc. 90 ¶ 8; Doc. 93 ¶ 6. The Program Agreement includes a paragraph in which the enrollee, by initialing, acknowledges and agrees that he or she "received, reviewed and called in response to a catalog offering debt settlement/mediation products and services." Doc. 92-12, Ex. A. The Program Agreement also includes a provision regarding a client's continuing obligations to pay his or her

debt, and the possibility that ceasing to pay those obligations will negatively impact his or her credit rating, as follows:

> The Company cannot stop any collection efforts that may be employed by creditor(s) including collection calls, letters, lawsuits or garnishments.   Client understands that their credit rating will be adversely affected should Client default or be delinquent in their payments to their creditor(s). . . . Client understands that this program may, if Client continues to default on payment obligations, negatively affect their credit score.   . . . Client understands that their accounts will continue to collect penalties, fees and interest until the accounts are settled.

Doc. 92-12, Ex. A.

Additionally, the Program Agreement outlines the client's rights and responsibilities with regard to payment for debt settlement services.   Specifically, the Program Agreement sets forth a fee schedule pursuant to which the client must pay a "service fee" of 12% of the client's total enrolled debt at the time of enrollment, plus a monthly "maintenance fee" of $49.95 for the duration of the program.   These fees are not tied to the actual settlement of a client's debt, but rather, under the terms of the Program Agreement, the "Company may deliver services at times unrelated to when it collects fees."   *Id.*   Further, the Program Agreement states that "[u]pon notification of sufficient funds available from Client, Company will begin negotiations to facilitate settlement of [the client's] enrolled debt."   The Program Agreement makes clear that "the service fee and maintenance fee, or any parts received thereof, are earned and non-refundable after the expiration of Client's ten (10) day cancelation period."   *Id.*

The Program Agreement further indicates that, in order to collect their fees, Defendants will "debit" a "designated bank account" of the client.   *Id*.   With regard to the funds in the client's designated account, the Program Agreement states that the client "at all times shall maintain complete control and discretion over all settlement funds."   *Id.*   A "Disclosure Statement," provided to clients along with the Program Agreement, similarly states that the client

"will be responsible for saving sufficient program funds in [his or her] own account." *Id.* The Program Agreement also provides that "if Client terminates this Agreement, there is no penalty or obligation for such termination." The Program Agreement then reiterates that, "[u]pon termination, all Fees paid by Client up to the date of withdrawal are earned and non-refundable, unless termination is made within the Client's state[d] cancellation period." *Id.*

Plaintiff submitted affidavits from five New Mexico residents, namely, Veronica Allander, Michael Cruz, Robert Martinez, James Howard, and Emery Coleman (collectively, the "New Mexico Enrollees"), who each received a solicitation in the mail from Defendants. Doc. 92, Exs. 2, 9-12. Attached to Mr. Howard's affidavit is a copy of the solicitation he received, which is dated April 15, 2011 and addressed to him. Doc. 92-12, Ex. A. At the top of the document is a facsimile of a "non-negotiable" "specimen" check written to James D. Howard, in the amount of $35,067, from "Credit Resolution Initiative." *Id.* The facsimile of the check includes an address and telephone number for Credit Resolution Initiative. Below the facsimile of the check, the mailing states: "This is an announcement to inform you that you may be eligible for an estimated $35,067 in debt relief through the Credit Resolution Initiative." *Id.* The mailing further states that enclosed therewith is "the 2011 Credit Resolution Initiative Catalog" for Mr. Howard's review. *Id.* Next, the mailing states that if Mr. Howard is "interested in receiving debt relief," he should "respond . . . by calling the toll free number listed in the 2011 Credit Resolution Initiative Catalog – 1 (800) 500-4893", which is the same telephone number noted in the facsimile check as belonging to Credit Resolution Initiative. *Id.* In a paragraph below, the mailing again asks Mr. Howard to "respond . . . by calling the toll free number listed in the 2011 Credit Resolution Initiative Catalog – 1 (800) 500-4893." *Id.* The mailing notes that Mr. Howard "may be eligible for debt relief estimated at $35,067," but states that the "debt relief amount obtained through [his]

negotiated settlement may be higher or lower than [that amount]." *Id.* Below a dotted line, the mailing states in all capital letters:

> This is a communication from Credit Resolution Initiative, Credit Arbitrators, LLC. The Credit Resolution Initiative provides consumers with professional debt negotiators who specialize in debt negotiation and settlement services. Debt relief can be achieved via debt negotiation and settlement of enrolled debt.

*Id.*

Each of the New Mexico Enrollees called Defendants in response to the written solicitation he or she received, and spoke with a representative about the types of services they provided. Doc. 92 ¶¶ 48, 66, 82, 96, 107. Each of the New Mexico Enrollees then chose to enroll in Defendants' program, and executed a Program Agreement. *Id.* ¶¶ 54, 70, 85, 98, 111. As part of enrolling in the program, each of the New Mexico Enrollees also signed a Dedicated Account Agreement and Application with Global Client Solutions, LLC, pursuant to which he or she set up a dedicated account to use in connection with Defendants' debt settlement program. *Id.* ¶¶ 56, 74, 86, 99, 113.

Within a month of enrolling in Defendants' program, fees and charges began to be automatically deducted on a monthly basis from the dedicated accounts of each of the New Mexico Enrollees and paid to Defendants. *Id.* ¶¶ 59, 61, 73, 88, 90, 100, 102, 114, 115. Despite collecting these monthly fees and charges from the New Mexico Enrollees, Defendants did not settle any of their debts. *Id.* ¶¶ 63, 79, 93, 105, 117. Ms. Allander and Mr. Coleman are in the process of canceling their Settlement Agreements with Defendants. Doc. 92-9 ¶ 18; Doc. 92-2 ¶ 17. Mr. Cruz, Mr. Martinez, and Mr. Howard have canceled their Settlement Agreements with Defendants. Doc. 92-10 ¶ 16; Doc. 92-11 ¶ 17, Doc. 92-12 ¶ 16. Mr. Cruz, Mr. Martinez, and Mr. Howard requested a refund of the fees and charges collected by Defendants. Doc. 92-10 ¶ 17, Doc. 92-11, Doc. 92-12 ¶ 17. Mr. Martinez received only a partial refund from Defendants.

Doc. 92-11. Defendants refused to refund any of the fees paid by Mr. Cruz and Mr. Howard, and, to date, neither of these individuals has received any refund from Defendants. Doc. 92-10 ¶ 18, Doc. 92-12 ¶ 17.

As noted above, the written materials sent to Defendants' clients included disclosures regarding a client's continuing obligations to pay his or her debt. The New Mexico Enrollees, however, state in their affidavits that, during telephone calls, Defendants' representatives made representations contrary to those written disclosures, directing the New Mexico Enrollees to stop paying their creditors and ignore delinquent bills and telephone calls from creditors, without explaining that such actions would negatively impact their creditworthiness. Doc. 92-9 ¶¶ 6, 13, Doc. 92-10 ¶¶ 14-15, Doc. 92-11 ¶ 12, 16, Doc. 92-12 ¶ 5, Doc. 92-2 ¶ 14-15. In contrast, individuals who formerly worked as credit specialists for Defendants, and who spoke with the New Mexico Enrollees, signed affidavits in which they state that: it was their "routine practice" to go over the written disclosures contained in the Program Agreement; they "never contradicted the disclosures contained in client agreements," but rather "routinely spoke about and reinforced those disclosures" over the telephone; and they did not tell the New Mexico Enrollees to stop paying their credit card bills or instruct them not to speak with their creditors. Doc. 93-1 ¶¶ 6, 9; Doc. 93-2 ¶¶ 6, 9; Doc. 93-3 ¶ 6, 9; Doc. 93-4 ¶¶ 6, 9; Doc. 93-5 ¶¶ 6, 9.

On January 5, 2012, the Attorney General for the State of New Mexico commenced this action by filing a Complaint alleging that Defendants committed various violations of the Telemarketing Sales Rule ("TSR"), 16 C.F.R. §§ 310.1 to 310.9 (Counts I to IV), and various violations of the New Mexico Unfair Practices Act ("NMUPA"), NMSA 1978, §§ 57-12-1 to 57-12-26. (Counts V to VIII). Doc. 1. Based on the alleged violations, Plaintiff seeks relief in the form of a permanent injunction, restitution and damages, and civil penalties. *Id.* On June 10,

2013, both parties filed motions for summary judgment. Docs. 90, 92. Defendants seek dismissal of all eight counts of the Complaint, and Plaintiff seeks a judgment in its favor on all eight counts of the Complaint. Doc. 92.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab*., 992 F.2d 1033, 1036 (10th Cir. 1993) (citations omitted). The moving party need not negate the nonmovant's claim, but rather must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc*., 912 F.2d 1238, 1241 (10th Cir. 1991) (citation omitted). The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment, *see Pueblo v. Neighborhood Health Ctrs., Inc.*, 847 F.2d 642, 649 (10th Cir. 1988), but rather must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"

*Celotex*, 477 U.S. at 324 (citation omitted).

Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law. *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

## **DISCUSSION**

I.   Defendants' Motion

Defendants argue that because they are not "telemarketers" and did not engage in "telemarketing," they are not subject to the TSR. Defendants further argue that because they are not subject to the TSR, they had no obligation to comply with the TSR, and any alleged failure to do so is not actionable under either the TSR or the NMUPA. On this basis alone, Defendants argue that they are entitled to summary judgment in their favor on all counts of the Complaint.

The TSR defines "telemarketing" as "a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call." 16 C.F.R. § 310.2(dd). Any business that takes part in "telemarketing" must comply with the TSR, regardless of whether the business initiates calls to customers, or merely receives calls from customers. FTC, Complying with the Telemarketing Sales Rule, (Feb. 2011), *at* http://business.ftc.gov/ documents/ bus27–complying–telemarketing–sales–rule.

The TSR explicitly excludes from the term "telemarketing" the solicitation of sales through the mailing of a catalog . . . "when the person making the solicitation does not solicit

customers by telephone but only receives calls initiated by customers in response to the catalog and during those calls takes orders only without further solicitation." 16 C.F.R. § 310.2(dd). For purposes of this exclusion, the catalog must: contain "a written description or illustration of the goods or services offered for sale; include[] the business address of the seller; include[] multiple pages of written material or illustrations; and [be] issued not less frequently than once a year." *Id.* Other than a catalog that meets these criteria, any direct mail advertising (including postcards, flyers, door hangers, brochures, "certificates," letters, email, facsimile transmissions, or similar methods of delivery) sent to someone urging a call to a specified telephone number regarding an offer of debt relief services is not exempt from the TSR. FTC, Complying with the Telemarketing Sales Rule, *supra*.

    Defendants argue that the undisputed evidence demonstrates that: they solicited sales only through the mailing of a catalog and received calls initiated by customers in response to that catalog; their telephone number was provided only in their catalogs; and their catalogs met all of the criteria necessary to exclude their solicitations from the definition of telemarketing. This argument misstates Defendants' own evidence, and ignores the evidence presented by Plaintiff. First, in his affidavit, Mr. Burton describes Defendants' mail solicitations as "written promotional materials" that "contained, referenced, and/or provided a catalog with a special catalog phone number." Thus, by Defendants' own admission, their promotional materials were not limited to a catalog, but rather encompassed other materials that may have included an actual catalog, but also may have simply "referenced" a catalog. Further, Mr. Burton does not state that Defendants' toll free numbers were listed only in their catalogs, but rather that those numbers were not listed anywhere "other than in the catalog *mailings*." As just explained, those mailings were not limited to catalogs.

9

Indeed, the mailing received by Mr. Howard proves this point. Defendants do not suggest, and the Court does not find, that the mailing they sent to Mr. Howard was a catalog, or contained any of the criteria for a catalog necessary to exclude a solicitation from the reach of the TSR. While stating that it was enclosing a catalog, the mailing itself urged Mr. Howard to call a specified telephone number that was listed no less than three times in the one-page mailing. The mailing identified itself both as "an announcement" and a "communication" from CreditArbitrators, "professional debt negotiators," and specifically solicited Mr. Howard to call to inquire about debt relief services. The mailing even provided an estimate of the amount of debt relief Mr. Howard could expect to obtain once he called, and a "specimen" check written to him in that amount to illustrate the point.

The mailing to Mr. Howard squarely refutes Defendants' contention that they solicited sales only through the mailing of a catalog, as described in 16 C.F.R. § 310.2(dd), and instead demonstrates that Defendants did, in fact, engage in "telemarketing." Contrary to Defendants' argument, they thus are subject to the TSR, and must comply with its provisions. As Defendants' motion for summary judgment rests solely on the faulty premise that they are not subject to the requirements of the TSR, their motion must be denied.

II.     Plaintiff's Motion

Plaintiff argues that the undisputed evidence demonstrates that, as a matter of law, Defendants' business practices, disclosures, acts, and omissions violated the TSR and the NMUPA. Accordingly, Plaintiff argues, it is entitled to summary judgment in its favor on those counts of the Complaint alleging violations of the TSR (Counts I through IV) and those counts of the Complaint alleging violations of the NMUPA (Counts V through VIII).

    A.        <u>Alleged Violations of the TSR</u>

        1.        <u>Count I</u>

Under the TSR, a seller or telemarketer providing debt relief services may not collect any fee from a customer until it reaches a successful result for its customer. Specifically, it is a violation of the TSR "to request[] or receiv[e] payment of any fee or consideration for any debt relief service until and unless . . . [t]he seller or telemarketer has renegotiated, settled, reduced or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer." 16 C.F.R. § 310.4(a)(5)(i)(A). In Count I, Plaintiff alleges that Defendants violated this provision of the TSR by taking and retaining payment from Mr. Martinez's dedicated account before they renegotiated, settled, reduced, or otherwise altered the terms of any of his debts.

    The Court agrees with Plaintiff that the undisputed evidence proves this allegation. First, the Program Agreement itself sets forth a monthly fee schedule pursuant to which the client must pay service and maintenance fees, regardless of whether any of his or her debts have been settled. Indeed, the Program Agreement makes clear that Defendants' fees will begin to be deducted from the client's dedicated account immediately, while also stating that it will not be until there are "sufficient funds available" that Defendants will even begin negotiations to facilitate settlement of the client's enrolled debt. The Program Agreement indicates that its fees are not tied to the actual settlement of a client's debt, noting that "the Company may deliver services at times unrelated to when it collects fees."

    The affidavits of Mr. Martinez and the other New Mexico Enrollees confirm that, within a month of enrolling in Defendants' program, fees and charges began to be automatically deducted on a monthly basis from their dedicated accounts. Despite requesting and receiving these

monthly fees and charges from Mr. Martinez and the other New Mexico Enrollees, Defendants did not settle any of their debts.   Other than a partial refund provided to Mr. Martinez, Defendants have retained all of the fees and charges they collected from the New Mexico Enrollees.

Defendants have come forward with no evidence to refute the facts established by their own Program Agreement and the affidavits of the New Mexico Enrollees that Defendants requested and received fees and charges from Mr. Martinez and the other New Mexico Enrollees before renegotiating, settling, reducing, or otherwise altering the terms of at least one of their debts.   To date, Defendants have not settled any of the debts of the New Mexico Enrollees, but have retained, with the exception of a partial refund, the fees requested and received from Mr. Martinez and the other New Mexico Enrollees.   The undisputed evidence thus demonstrates that Defendants are in violation of Section 310.4(a)(5)(i)(A).   Accordingly, summary judgment in favor of Plaintiff on Count I of the Complaint is warranted.

2. Count II

The TSR requires that, before enrolling a potential client, any seller or telemarketer of a debt relief service must truthfully, clearly, and conspicuously disclose the possible consequences if the customer fails to make timely payments to creditors.   FTC, Complying with the Telemarketing Sales Rule, *supra*.   Specifically,

> to the extent that any aspect of the debt relief services relies upon or results in the customer's failure to make timely payments to creditors or debt collectors, [the telemarketer or seller must disclose] that the use of the debt relief services will likely adversely affect the customer's creditworthiness, may result in the customer being subject to collections or sued by creditors or debt collectors, and may increase the amount of money the customer owes due to the accrual of fees and interest.

16 C.F.R. § 310.3(a)(1)(viii)(C).   In Count II, Plaintiff alleges that Defendants violated this provision by advising Mr. Martinez to stop paying his creditors without also explaining that such

action would adversely affect his creditworthiness and subject him to collection efforts. In its motion, Plaintiff argues that the undisputed evidence proves this allegation. Specifically, Plaintiff cites to the affidavits of Mr. Martinez and the other New Mexico Enrollees in which they state that, during telephone calls, Defendants' representatives directed them to stop paying their creditors and ignore delinquent bills and telephone calls from creditors, without explaining that such actions would negatively impact their creditworthiness.

The affidavits of Defendants' former credit specialists, however, directly contradict the statements of the New Mexico Enrollees. According to their affidavits, the credit specialists who spoke to each of the New Mexico Enrollees routinely spoke about and reinforced the disclosures set forth in Defendants' written materials, which materials disclosed a customer's continuing obligations to pay his or her debt and the possible consequences of failing to meet those obligations. The credit specialists also stated that they did not direct the New Mexico Enrollees to stop paying their credit card bills or to refrain from speaking with their creditors. The statements set forth in the sworn affidavits of Defendants' former employees, which clearly conflict with those set forth in the sworn affidavits of the New Mexico Enrollees, create a genuine dispute as to the facts material to Plaintiff's claim regarding the sufficiency of Defendants' disclosures.[1] Accordingly, summary judgment is not appropriate on Count II of the Complaint.

---

[1] Plaintiff contends, erroneously, that Defendants are required to go beyond their own affidavits, and produce "business records or evidence disputing Plaintiff's claim," to create an issue of fact as to whether Defendants made the required disclosures. Doc. 99 at 15. Plaintiff's misunderstanding of the summary judgment standard appears to stem from its omission of the word "by" in its quotation from *Celotex*, which holds that, when opposing a motion for summary judgment, the non-moving party must "go beyond the pleadings and *by* [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file," designate 'specific facts showing that there is a genuine issue for trial.'" 477 U.S. at 324 (emphasis added). The law is clear that summary judgment may be defeated by evidence in the form of affidavits.

3.      Count III

The TSR requires that any seller or telemarketer of a debt relief service that asks or requires its customers to set aside funds in a dedicated account must truthfully, clearly, and conspicuously disclose the customer's rights regarding the dedicated account.   FTC, Complying with the Telemarketing Sales Rule, *supra*.   Specifically, the telemarketer or seller must disclose

> that the customer owns the funds held in the account, the customer may withdraw from the debt relief service at any time without penalty, and, if the customer withdraws, the customer must receive all funds in the account, other than funds earned by the debt relief service in compliance with [the provisions of the TSR that disallow the collection of fees unless and until the debt relief service settles at least one of the customer's debts].

16 C.F.R. § 310.3(a)(1)(viii)(D).   In Count III, Plaintiff alleges that Defendants violated this provision by failing to disclose to Mr. Martinez that he owned the funds in his Global Client Solutions dedicated account, that he could withdraw from the debt settlement program at any time without penalty, and that if he withdrew, he was entitled to receive all of the funds in his dedicated account that had not been legally earned by Defendants.   In its motion, Plaintiff argues that none of the materials provided to Mr. Martinez or the other New Mexico Enrollees makes these required disclosures.

In response to Plaintiff's argument, Defendants have failed to come forward with any documents that contain disclosures sufficient to meet the requirements of Section 310.3(a)(1)(viii)(D).   While the Program Agreement states that the client "at all times shall maintain complete control and discretion over all settlement funds," it does not specifically reference the client's dedicated account, or make clear that the client owns the funds held in that account.   Similarly, the reference to the client's "own account" made in the Disclosure Statement is insufficient, as a matter of law, to clearly and conspicuously disclose the fact that the customer

14

owns the funds held in his or her dedicated account.

Further, while the Program Agreement discloses that the customer may terminate the Agreement without penalty or obligation, neither the Program Agreement nor any other document provided to the client by Defendants discloses that, if the customer withdraws from Defendants' debt relief service, he or she must receive all funds in the dedicated account other than funds earned by Defendants in compliance with the provisions of the TSR.  To the contrary, the Program Agreement states that all the fees paid by the customer, regardless of whether they were earned in compliance with the TSR, are deemed to have been "earned" and therefore non-refundable.  As discussed above, however, any fees paid by the customer before settlement of at least one of the customer's debts were not earned in compliance with the TSR.  Because the Program Agreement makes no distinction between fees paid and fees earned in compliance with the TSR, its disclosures regarding the customer's right to receive funds upon withdrawal from Defendants' service are not truthful, clear and conspicuous.

Neither the affidavits nor the documents presented by Defendants demonstrate that Defendants properly disclosed to their clients, including Mr. Martinez, their rights regarding their dedicated accounts.  Accordingly, the undisputed evidence demonstrates that Defendants are in violation of Section 310.3(a)(1)(viii)(D).  Summary judgment in favor of Plaintiff on Count III of the Complaint thus is warranted.

          4.     <u>Count IV</u>

The TSR requires any seller or telemarketer of a debt relief service to truthfully, clearly, and conspicuously disclose "any material aspect" of its service, including but not limited to "the amount of money or percentage of the debt amount that a customer may save by using such service; [and] . . . the effect of the service on a customer's creditworthiness."  16 C.F.R. §

310.3(a)(2)(x).  In Count IV, Plaintiff alleges that Defendants violated this provision by: (1) including Mr. Martinez's debt to Chase in the debt settlement program when Chase's policy is that it will not negotiate with debt settlement companies and given Defendants' experience in this industry, Defendants knew or should have known of Chase's policy; and (2) informing Mr. Martinez that once his credit cards were renegotiated, all three credit bureaus would be notified by his creditors that his debt had been satisfied and paid in full for less than the balance owed, thereby implying that his creditworthiness would be improved, rather than adversely affected, by his participation in, and completion of, the debt settlement program.

In its motion, Plaintiff fails to mention or provide evidentiary support for the allegations set forth in Count IV.   Indeed, Mr. Martinez's affidavit is devoid of any statements regarding the enrollment of his Chase debt in Defendant's debt settlement program, or representations made to him about notification to credit bureaus about the satisfaction of his debt.   Instead, Plaintiff attempts to prove Defendants' alleged violation of Section 310.3(a)(2)(x) with evidence completely unrelated to the allegations in the Complaint.   None of the evidence in the record supports, much less proves, the allegations in Count IV.   Indeed, even the unrelated evidence presented by Plaintiff fails to prove its contention that Defendants misrepresented the amount of money and percentage of debt that a customer might save by using Defendants' debt relief services.   Accordingly, summary judgment is not appropriate on Count IV of the Complaint.

      B.      <u>Alleged Violations of the NMUPA</u>

The NMUPA makes unlawful any "[u]nfair or deceptive trade practices [or] unconscionable trade practices in the conduct of any trade or commerce." NMSA 1978, § 57-12-3. The NMUPA defines the term "unfair or deceptive trade practice" as:

> an act specifically declared unlawful pursuant to the Unfair Practices Act, a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services ... by any person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person[.]

NMSA 1978, § 57-12-2(D). A claim under the NMUPA has four elements:

> *First*, the complaining party must show that the party charged made an "oral or written statement, visual description or other representation" that was either false or misleading. *Second*, the false or misleading representation must have been "knowingly made in connection with the sale, lease, rental or loan of goods or services in the extension of credit or ... collection of debts." *Third*, the conduct complained of must have occurred in the regular course of the represener's trade or commerce. *Fourth*, the representation must have been of the type that "may, tends to or does, deceive or mislead any person."

*Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 728 F. Supp. 2d 1170, 1186 (D.N.M. 2010) (quoting *Stevenson v. Louis Dreyfus Corp.*, 811 P.2d 1308, 1311 (1991)). Generally, "whether a certain act is deceptive or misleading for the purposes of a consumer-protection statute is question of fact that the fact-finder must decide." *Guidance Endodontics*, 728 F. Supp. 2d at 1192 (noting that "the weight of authority from other jurisdictions" holds that whether an act is deceptive or misleading is a question of fact, and collecting cases). Unless "a reasonable jury could reach only one verdict," the Court should not grant judgment as a matter of law on whether a statement is deceptive or misleading. *Id.* at 1193.

In Counts V through VIII, Plaintiff alleges that Defendants made false and misleading statements in violation of the NMUPA by: receiving payment before renegotiating, settling or otherwise altering the terms of Mr. Martinez's debts (Count V); failing to disclose to Mr. Martinez the negative consequences of stopping payment to his creditors (Count VI); failing to disclose to Mr. Martinez that he owned the funds in his account with Global Client Solutions (Count VII); and misrepresenting material aspects of the debt relief service, including the effect of the debt relief

17

service on Mr. Martinez's creditworthiness, as well as including debts in the program from creditors who are known not to negotiate with debt settlement companies (Count VIII). In its Motion, Plaintiff argues that the undisputed evidence establishes these allegations. As discussed herein, the Court does not find that Plaintiff is entitled to judgment in its favor as a matter of law on any of its NMUPA claims.

First, in order to establish a claim under the NMUPA, Plaintiff must allege, and prove, that Defendants made an oral or written statement, visual description or other representation that was false or misleading. In Count V, Plaintiff does not allege any statement, description or representation, let alone a false or misleading one. Although, as discussed above, Plaintiff has presented evidence establishing that Defendants violated the TSR by receiving payment before renegotiating, settling, or otherwise altering the terms of Mr. Martinez's debts, the same evidence does not and cannot establish that Defendants violated the NMUPA.

Second, as set forth above, a genuine factual dispute remains as to whether Defendants advised Mr. Martinez to stop paying his creditors without also explaining that such action would adversely affect his creditworthiness and subject him to collection efforts. Because there remains a question of fact as to whether there was any failure on Defendants' part to make such disclosures, the Court cannot make a determination as a matter of law as to whether Defendants violated the NMUPA based on the alleged insufficiency of their disclosures.

Third, as set forth above, the Court has determined that Defendants did not meet the requirements of the TSR that they truthfully, clearly, and conspicuously disclose that its customers owned the funds in their dedicated accounts. The issue of whether Defendants' disclosures were adequate under the TSR is, however, distinct from the issue of whether Defendants' disclosures were deceptive or misleading for purposes of the NMUPA. The latter issue is generally a

question of fact for the fact finder.   The Court is not convinced that, under the circumstances here, it would be appropriate to decide, as a matter of law, whether Defendants' disclosures were deceptive or misleading.   Rather, it is a question of fact for the jury to determine whether Defendants' representations regarding its customers' dedicated accounts may have, tended to or did deceive or mislead any person.

Finally, as set forth above, Plaintiff has failed to prove that Defendants misrepresented the effect of their services on Mr. Martinez's creditworthiness or included debts in his debt relief program from creditors who are known not to negotiate with debt settlement companies.   Because none of the evidence supports the allegations in Count V, there is no basis to conclude that the conduct alleged in Count V constitutes a violation of the NMUPA.

## **CONCLUSION**

Defendants are subject to the TSR, and must comply with its provisions.   As Defendants' motion for summary judgment in their favor rests solely on the faulty premise that they are not subject to the requirements of the TSR, their motion must be denied.

The undisputed evidence demonstrates that Defendants requested and received fees and charges from Mr. Martinez and the other New Mexico Enrollees before renegotiating, settling, reducing, or otherwise altering the terms of at least one of their debts.   Based on this undisputed evidence, Defendants violated Section 310.4(a)(5)(i)(a) of the TSR, and accordingly, Plaintiff is entitled to summary judgment in its favor on Count I of the Complaint.

There is a genuine dispute as to the facts material to Plaintiff's claim that Defendants advised Mr. Martinez and the other New Mexico Enrollees to stop paying their creditors without also explaining that such action would adversely affect their creditworthiness.   Accordingly, Plaintiff has not established that Defendants, as a matter of law, violated Section

310.3(a)(1)(viii)(C); summary judgment thus is not appropriate on Count II of the Complaint.

The undisputed evidence establishes that Defendants did not truthfully, clearly, and conspicuously disclose their customers' rights regarding their dedicated accounts. Based on this undisputed evidence, Defendants violated Section 310(3)(a)(1)(viii)(D) of the TSR, and accordingly, Plaintiff is entitled to summary judgment in its favor on Count III of the Complaint.

Plaintiff has failed to come forward with evidence to prove its allegations that Defendants violated Section 310.3(a)(2)(x) of the TSR. Accordingly, summary judgment is not appropriate on Count IV of the Complaint.

Finally, the Court does not find that Plaintiff is entitled to judgment in its favor as a matter of law on any of its NMUPA claims, set forth in Counts V through VIII of the Complaint.

**IT IS THEREFORE ORDERED THAT** Defendants' Motion for Summary Judgment on All Counts of the Complaint [Doc. 90] is denied; Plaintiff's Motion for Summary Judgment and Supporting Memorandum on All Claims [Doc. 92] is granted in part and denied in part, as follows: summary judgment in Plaintiff's favor is granted as to Count I and Count III of the Complaint, and denied as to Counts II, and IV through VIII of the Complaint.

DATED this 26th day of March, 2014.

_____
MARTHA VÁZQUEZ
United States District Judge